Ronald Abramson
David G. Liston
**LEWIS BAACH pllc**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 826-7001

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **WAG ACQUISITION, L.L.C.**,<br><br>　Plaintiff,<br><br>v.<br><br>**MULTI MEDIA, LLC, f/k/a Zmedianow, LLC, d/b/a chaturbate.com;**<br><br>**HEARILLE SERVICES LIMITED, d/b/a chatbill.com;**<br><br>**CWIE, LLC, d/b/a Cavecreek Wholesale Internet Exchange, Cavecreek Web Hosting, and highwebmedia.com;**<br><br>**CCBILL, LLC;**<br><br>**CWIE HOLDING COMPANY, INC.; and**<br><br>**DOES 1-20**,<br><br>　Defendants. | Civil Action No.:<br><br><br><br><br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**and**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WAG ACQUISITION, L.L.C., for its complaint against Defendants, alleges infringement of United States Patent Nos. 8,122,141 and 8,327,011 (the "patents-in-suit"). Plaintiff alleges that Defendants directly and indirectly infringe the patents-in-suit by conduct including without limitation their Internet delivery of live adult video web cam performances, as more particularly specified herein.

## THE PARTIES

1. Plaintiff WAG Acquisition, L.L.C. is a New Jersey limited liability company with its principal place of business at 3 Gold Mine Road, Suite 104, Flanders, New Jersey 07836.

2. On information and belief, Defendant MULTI MEDIA, LLC ("MMLLC") is a California limited liability company with its principal place of business at 23600 El Toro Road, #D344, Lake Forest, California 92630. On information and belief, MMLLC was formerly known as ZMEDIANOW, L.L.C., and located at 200 Goddard Drive, Irvine, California 92618. On information and belief, MMLLC is doing business under a number of trade names, including without limitation chaturbate.com.

3. On information and belief, Defendant HEARILLE SERVICES LIMITED ("Hearille") is a United Kingdom private limited company with offices at 17 Rolling Mill, Consett, County Durham, DH8 6NH, United Kingdom, which also maintains an address at 10 Quentin Drive, Dudley, West Midlands, UK, DY1 2H, United Kingdom. On information and belief, Hearille performs billing and other services for Defendants.

Case 2:19-cv-07076-JAK-GJS   Document 1   Filed 04/11/14   Page 3 of 15   Page ID #:3

3

4. On information and belief, Defendant CWIE, LLC ("CWIE") is an Arizona limited liability company with offices at 2353 West University Drive, Tempe, Arizona 85281. On information and belief, Defendant CWIE is doing business under trade names including without limitation Cavecreek Wholesale Internet Exchange, Cavecreek Web Hosting, and highwebmedia.com.

5. On information and belief, Defendant CCBILL, LLC ("CCBILL") is an Arizona limited liability company with offices at 2353 West University Drive, Tempe, Arizona 85281.

6. On information and belief, Defendant CWIE HOLDING COMPANY, INC. ("CWIE HOLDING") is an Arizona corporation with offices at 2353 West University Drive, Tempe, Arizona 85281. On information and belief, Defendant CWIE HOLDING owns 100% of each of Defendants CWIE and CCBILL.

7. On information and belief, Defendants DOE 1 – DOE 20 are entities whose precise identities are unknown to Plaintiff at this time, which operate in concert with Defendants MMLLC, Hearille, CWIE, CCBILL, and CWIE HOLDING in connection with the conduct complained of herein.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

9. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## PLAINTIFF'S BUSINESS AND DEVELOPMENTS

10.. Plaintiff, operating under the trade name SurferNETWORK, is in the business of providing Internet broadcasting services for live and on-demand audio and video program material. Plaintiff began this business in 1998, and has been one of the leading providers of such services to the terrestrial radio stations and other content providers that comprise its customer base.

11. Early in developing its business, two of Plaintiff's principals, William A. Grywalski, ("Grywalski") and Harry Emerson ("Emerson"), recognized a need that existed in the field of Internet delivery of broadcast media due to the shortcomings in then current Internet streaming technologies. They observed that long startup delays due to "buffering" and frequent program interruptions (sometimes referred to as "jitter") made the experience of trying to listen to or view streaming Internet content frustrating to the end user, and therefore impractical as a content delivery mechanism. They were interested in making the Internet streaming experience more like radio or television, including the immediacy of having the programming appear to start instantly on demand (e.g., turning on a radio or flipping channels), and continue playing once started without random interruptions.

12. Plaintiff engaged the assistance of a software design engineer, Harold Price ("Price"), to develop solutions for the shortcomings that Grywalski and Emerson saw in the current technology, with respect to streaming media playback performance, as well as other technological issues concerning Internet delivery of broadcast media. Price worked on several aspects of this matter for Plaintiff over the period 1999-2001.

13.  Price was aware of the then current approach to streaming, which attempted to overcome streaming transmission delays and jitter by a variety of techniques, including, for example, establishing a content buffer of 20-seconds or so in duration, on the receiving (user or "client") end of the communication, within the client's media player or media player browser plugin.  After the user selected (e.g., clicked on) a stream, the player would start filling this buffer at the playback rate and then start playing when the buffer was full.  While this method did provide some protection against interruptions for the duration of whatever content was initially buffered, it entailed an undesirable startup delay for "buffering," and provided no means for graceful recovery once the 20 seconds worth of content in the buffer was consumed.

14.  Price conceived of solutions to these problems.  He built a prototype that implemented one embodiment of those solutions, and he demonstrated that a system according to his new design could overcome the problems put to him by Grywalski and Emerson.

15.  Plaintiff and its predecessors in interest filed a number of U.S. patent applications on these solutions, as enumerated below.  To date, this family of patent applications has resulted in seven issued U.S. patents, including the two patents-in-suit.  All of these patent applications were assigned to Plaintiff, or to a predecessor-in-interest of Plaintiff and reassigned to Plaintiff.

16.  Plaintiff has been conducting an active, operating business ever since the developments described above, and has actively practiced under the technology taught in the patents-in-suit, from then to the present.   Plaintiff has developed

6

commercial arrangements under which it streams content for numerous terrestrial radio stations and content providers in New Jersey, regionally, nationally, and internationally. It also provides a One-Click Royalty Reporter™ for radio stations to report streaming media performance royalty information to SoundExchange (a performing rights organization that collects royalties on the behalf of sound recording copyright owners ), among other services.

17. Despite its successes, Plaintiff's business has been damaged by infringement such as that practiced by the Defendants.

## THE PATENTS-IN-SUIT

18. United States Patent No. 8,122,141 (the '141 patent") was duly and legally issued on February 21, 2012, for an invention entitled "STREAMING MEDIA BUFFERING SYSTEM." Plaintiff is the owner by assignment of the '141 patent and owns all rights to recover for past and ongoing infringement thereof.

19. United States Patent No. 8,327,011 (the '011 patent") was duly and legally issued on December 4, 2012, for an invention entitled "STREAMING MEDIA BUFFERING SYSTEM." Plaintiff is the owner by assignment of the '011 patent and owns all rights to recover for past and ongoing infringement thereof.

## DEFENDANTS' ACTIVITIES

20. Defendants are in the business of providing and hosting live adult webcam performances over the Internet, and providing an online social venue in which users can interact with other users online, including without limitation through the site chaturbate.com. Users can "tip" other users and pay them to go into

"private" sessions, and some users specialize as chaturbate.com "Models" to earn these revenues. The payments may be made by way of "tokens," which the users purchase from Defendants. Defendants allow users to cash in their tokens, but take a substantial revenue share as a result in the money that users spend on the site. On information and belief, Defendants have recruited a large number of webcam performers in the U.S., Western and Eastern Europe, and elsewhere, to form an online pornography enterprise of national and international scope.

21. The live performances described in the preceding paragraph are streamed to Internet users through server installations under Defendants' ownership or control. The streaming transmissions are targeted to Internet users around the world, on diverse systems, including, without limitation, desktop computers, as well as smartphones and tablets running under various operating systems and environments, including without limitation, as the case may be, Apple® iOS and Android™ mobile operating systems, the Windows®, and OS X® desktop operating systems, and Safari®, Chrome™, Firefox®, Opera™, Internet Explorer®, and other Internet browsers.

22. Defendants aggressively market their live webcam services to a worldwide audience, including, on information and belief, a substantial volume of users in this District, from which defendants derive substantial revenues. On information and belief, Defendants' worldwide collection of performers includes New Jersey residents, who perform online over Defendants' infringing services, from New Jersey, using facilities provided by Defendants. On information and belief,

Defendants also regularly make business visits to New Jersey and sponsor events in New Jersey to promote their online services to New Jersey residents and others.

23. Adult streaming media is an extremely high volume business, which is well known as consuming a high percentage of the total bandwidth available on the Internet. Operating in this market requires sophisticated technology and complex infrastructure.

24. While the operational demands of the adult streaming business entail high infrastructure cost, the market for Defendants' services is also very large, making the business extremely lucrative.

25. Success in Defendants' business is highly dependent on fast, smooth, uninterrupted delivery of streaming media content, such as that made possible by Plaintiff's patents. Defendants derive great value as a result of operating under Plaintiff's patented technology, for which they have not compensated Plaintiff.

26. Defendants provide their various telecommunications services as described herein from banks of computers, configured as web and/or media servers. At least some of the servers accused of infringement herein are hosted by Defendant CWIE, under the trade name Cavecreek Web Hosting and/or highwebmedia.com, from servers at the domain highwebmedia.com. On information and belief, Defendant CWIE provides more than mere physical facilities to MMLLC, providing to MMLLC and/or others configured streaming services for both Video on Demand ("VOD") and live webcam streaming. For example, CWIE advertises that, under the trade name "Cavecreek Web Hosting," it provides "VOD/Live Cam" services as part of its hosting services, stating:

> "Cavecreek's video solutions leverage an easy-to-use, high performance player and content management system (CMS). When layered with Cavecreek hosting/CDN and CCBill processing, our VOD and Live Cam solutions enable you to upload, encode, and manage files, as well as monetize and deliver your video and live cam content to increase your revenues."

Based on the streams provided by highwebmedia.com for chaturbate.com, Plaintiff believes Defendant CWIE's "VOD and Live Cam solutions" to be infringing.

27. Defendants' servers are configured to stream Defendants' live webcam performances and other video streams over a variety of delivery technologies to, inter alia, desktop computers and mobile devices, including without limitation, smartphones and tablets as described above, in a manner that infringes Plaintiff's patents.

28. Defendants also provide an "Affiliate" program, under which Defendants' chaturbate.com and other webcam sites can be adapted ("white labeled") for other Internet service providers on a revenue splitting basis, or simply linked to, on a similar basis. Through such affiliation, providers of other prominent pornography sites (frequently "Tube" (Youtube-style) sites offering short, low-quality, prerecorded clips on a free basis), provide a paid, revenue-generating webcam adjunct service under the Tube site provider's own branding. The live webcam Affiliate site will appear to the user of the Tube site as a click-through site, or in a window that pops over the Tube site. Though branded and decorated to look like the Tube site, the Affiliate site is actually served by MMLLC and/or one of the other Defendants herein. The Affiliate site provider and the Defendants split the revenue resulting from the Affiliate site activity, in accordance with the terms of Defendants' Affiliate program.

29. On information and belief, Defendants Hearille and CCBILL provide services to the other Defendants, including without limitation billing and payment processing services. As may be seen in the advertising material of Defendant CWIE noted above, Defendants offer billing services of CCBILL as part of a package "layered" with Defendants' "VOD and Live Cam solutions," to provide a benefit in terms of increased revenues. On information and belief (and without limiting any other allegation herein concerning Defendants' concerted activities), Defendants Hearille and CCBILL economically benefit from Defendants' infringement, in that said infringement, by using Plaintiff's patented Internet streaming delivery technology, greatly improves the quality, reliability, and responsiveness of Defendants' streaming video, thereby drawing users to Defendants' websites, and increasing the billing revenues.

30. On information and belief, defendants DOE 1– DOE 20 ("Doe Defendants") include persons and entities that materially aid and assist in carrying out the infringing acts alleged herein. The Doe Defendants include without limitation operators of "Affiliated" web sites that are cosmetically modified versions of chaturbate.com or others of Defendants' webcam sites, carrying the branding of such Doe Defendants. These Doe Defendants participate in revenue split deals with the other Defendants named herein (as described above in connection with Defendants' Affiliate program), under which they take a substantial share in revenues derived from infringing Plaintiff's patents.

31. As a consequence of the above described activities, Defendants have infringed and are continuing to infringe Plaintiff's patents, including at least the patents-in-suit.

## COUNT I: INFRINGEMENT OF THE '141 PATENT

32. Plaintiff repeats and realleges the allegations of paragraphs 1-31 above as if fully set forth at length herein.

33. Defendants have and continue to directly and indirectly infringe at least claims 1-8, 10-17, 19-21, 23, and 24-28 of the '141 patent by providing streaming performances over the Internet through their manufacture, distribution, use, sale, importation, and/or offer for sale of systems, methods, products, and processes for:

- creating or storing on their servers streaming media from a live source (or from a disk file) in a form comprising a plurality of sequential media data elements, which are identified by serial identifiers,

- programming the servers to receive requests from user systems for media data elements corresponding to serial identifiers specified in the requests,

- programming the servers to send the media data elements responsive to the user requests, with the result that the streaming media contained in the media data elements are sent to the user at a rate more rapid than its playback rate,

- with knowledge of the '141 patent at least since Plaintiff's notice thereof to Defendants (as recited in Par. 41), inducing the user to use media player software for receiving streaming media from Defendants' specially programmed servers, and for playing the streaming media so received, wherein the media player software maintains a record of the identifier of the last data element that has been received, and transmits to the server requests to send one or more data elements, specifying the identifier of the data elements, as

required by the media player software to maintain a sufficient number of media data elements in the media player software for uninterrupted playback.

Defendants are liable for their infringement of the '141 patent pursuant to 35 U.S.C. §§ 271(a)-(c).

34. Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

35. Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology. Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

### COUNT II: INFRINGEMENT OF THE '011 PATENT

36. Plaintiff repeats and realleges the allegations of paragraphs 1-35 above as if fully set forth at length herein.

37. Defendants have and are continuing to contributorily infringe and induce infringement of claims 1-4 the '011 patent by their manufacture, distribution, use, sale, and/or offer for sale of software components, systems, and services specially adapted to be used in conjunction with browsers and/or media players that infringe the '011 patent, wherein the browsers and/or media players:

- request from Defendants' servers a predetermined number of media data elements, requesting the elements by serial identifier,

- receive media data elements sent to by Defendants' servers responsive to said requests,

- implement a buffer manager to store media data elements received from Defendants' servers and maintain a record of the serial number of the last media data element received,

- play the media data elements sequentially from the buffer,

- repeat such requests so as to maintain a pre-determined number of media data elements in the buffer.

Defendants' said server components, systems, and services are specifically adapted to work with, and require, browsers and/or media players configured in an infringing manner as aforesaid, in order for Defendants' steaming media delivery to operate. Defendants, having knowledge of the '011 patent at least since Plaintiffs' notice thereof to defendants (as recited in Par. 41), thereby induce the users of said browsers and/or media players to infringe the '011 patent, and contribute to such infringement. Defendants are liable for their infringement of the '011 patent pursuant to 35 U.S.C. §§ 271(b)-(c).

38. Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

39. Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology. Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

## COUNT III: WILLFUL INFRINGEMENT

40. Plaintiff repeats and realleges the allegations of paragraphs 1-39 above as if fully set forth at length herein.

41. The filing of this action for infringement constitutes notice to Defendants of such infringement, pursuant to 35 U.S.C. § 287. Defendants were also simultaneously notified of their infringement by letters sent to their business addresses. At least upon receipt of such notices Defendants should have understood that there was an objectively high likelihood that their actions thereafter constituted, and were inducing and contributing to, patent infringement.

42. Defendants' continued infringement at least after such notice is willful and deliberate, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

43. Plaintiff demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff WAG ACQUISITION, L.L.C. requests an entry of judgment in its favor and against Defendants as follows:

a) Declaration that Defendants have each infringed United States Patent Nos. 8,122,141 and 8,327,011;

b) Declaration that each of Defendants' infringement has been willful, and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284, jointly and severally against the Defendants;

c) Permanently enjoining Defendants, their officers, directors, employees, agents, and all those in concert and participation with them from continued infringement of infringed United States Patent Nos. 8,122,141 and 8,327,011;

d) Awarding the past and future damages arising out of Defendants' infringement of United States Patent Nos. 8,122,141 and 8,327,011 to Plaintiff, together with prejudgment and post-judgment interest, in an amount according to proof, jointly and severally against the Defendants;

e) Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law, jointly and severally against the Defendants; and

f) For such other costs and further relief as the Court may deem just and proper.

Dated:    April 11, 2014

RONALD ABRAMSON
DAVID G. LISTON
LEWIS BAACH PLLC
The Chrysler Building
405 Lexington Avenue
New York, NY 10174


By: s/ Ronald Abramson
        Ronald Abramson
Tel: (212) 822-0163


By: s/ David G. Liston
        David G. Liston
Tel: (212) 822-0160

*Attorneys for Plaintiff*